UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLARENCE THOMAS,

                  Petitioner,

v.                               Case No. 3:03-cv-148-J-99MMH

BOBBY DODD, et al.,

                  Respondents.

_____

## ORDER

### I. Status

On February 24, 2003, Petitioner Clarence Thomas, who is proceeding *in forma pauperis* and *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254. On March 24, 2003, Petitioner filed an Amended Petition (Doc. #5), in which he challenges his 1999 state court (Duval County, Florida) conviction for aggravated battery. In the Amended Petition, he raised the following grounds: (1) the conviction was obtained by an unconstitutionally impaneled jury (Juror Brewster), and (2) ineffective assistance of trial counsel for (a) failure to obtain evidence regarding the screen doors and the kitchen window, (b) failure to show that the knife did not have Petitioner's blood or fingerprints on it, (c) failure to produce

the witnesses who could verify the extent of Petitioner's intoxication, and (d) failure to request self defense jury instructions that would support Wilcox and Speller's testimony that the victim attacked Petitioner. However, in Petitioner's Reply to the Respondents' Response (Doc. #33) (hereinafter Reply), Petitioner chose to waive this Court's consideration of ground one and ground two, sub-issues (a) and (b). Therefore, before the Court now are grounds 2(c) and 2(d).

Respondents filed a Response to Petition for Writ of Habeas Corpus (Doc. #27) (hereinafter Response). In support of their contentions, they submitted exhibits.[1] Petitioner has filed a Reply (Doc. #33). This case is now ripe for review.

## II. Procedural History

Petitioner Clarence Thomas was charged with aggravated battery with the use of a deadly weapon. Ex. A at 8. After a jury trial, the jury, on May 13, 1999, found him guilty of aggravated battery as charged in the Information. Ex. B, Transcript of the Jury Trial (hereinafter Tr.); Ex. N, Verdict. Petitioner was sentenced to twenty (20) years of incarceration as a habitual felony offender. Ex. L; Ex. M.

---

[1] Respondents submitted exhibits A1-A2, B1-B4 and C1-C2 in support of their Motion to Dismiss (Doc. #8). See Exhibits to Motion to Dismiss (Doc. #9). Further, they submitted exhibits A-U and 1-9 in support of their Response (Doc. #27). See Index to Appendix (Doc. #29). This Court will hereinafter refer to Respondents' exhibits as "Ex."

On May 19, 1999, Petitioner filed a motion for new trial, claiming that the trial court should have granted his motion for judgment of acquittal; that the verdict was contrary to the weight of the evidence and the law; and, that the court erred by not allowing a peremptory strike of Juror Brewster. Ex. J.  After a hearing on May 26, 1999 (Ex. M), the trial court denied the motion for new trial. Ex. K.

On appeal, Petitioner raised one issue:  the trial court erred in denying Petitioner's peremptory strike of Juror Brewster. Ex. C.  The State filed an Answer Brief. Ex. D.  On March 7, 2000, the appellate court per curiam affirmed without a written opinion. Thomas v. State, 757 So.2d 504 (Fla. 1st DCA 2000); Ex. E. Petitioner's motion for rehearing was denied on May 2, 2000. Ex. F.  The mandate issued on May 18, 2000.  Ex. G.

On August 24, 2000, Petitioner filed his first motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising two issues: (1) trial counsel was ineffective for failure to prepare, investigate and present a valid and viable defense of voluntary intoxication for the specific intent crime of aggravated battery, and (2) trial counsel was ineffective for failure to have expert testimony regarding the victim's injuries. Ex. H.  On December 13, 2000, the trial court denied the Rule 3.850 motion. Ex. I.  On August 10, 2001, the appellate court affirmed without a written

opinion.  <u>Thomas v. State</u>, 798 So.2d 729 (Fla. 1st DCA 2001); Ex. B3.  The mandate issued on November 15, 2001.  Ex. B4.

On May 21, 2002, Petitioner filed a second motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850.  Ex. S. Thereafter, on June 20, 2002, he filed an amended second motion for post conviction relief, raising the following claims: (1) ineffectiveness for counsel's failure to interview, call, investigate or produce neighbor residents as witnesses at trial; (2) ineffectiveness for counsel's failure to investigate and produce medical testimony and records concerning the extent of the victim's injuries; (3) ineffectiveness for counsel's failure to investigate the facts in the case which lead to her failure to prepare a proper defense; (4) ineffectiveness for counsel's failure to properly move for a motion for judgment of acquittal; (5) ineffectiveness for counsel's failure to request or agree with the established lesser included arranged offenses by the State; (6) the trial court erred by not instructing the jury on all necessary lesser included offenses; and, (7) the trial court erred in sentencing Petitioner to a twenty-year sentence "by presumption of judicial vindictiveness."  Ex. T.  On December 6, 2002, the trial court denied the second amended motion for post conviction as successive and procedurally barred.  Ex. U.  Petitioner did not appeal.

As previously noted, Petitioner initiated this action in this Court on February 24, 2003.  This action was timely filed within the one-year limitation period for filing section 2254 petitions. See 28 U.S.C. § 2244(d)(1).

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).

## IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.  Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.  AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases.  Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  Subsection (d) of § 2254 provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness."  Van Poyck v.

7

Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).
>
>         . . . .
>
> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

8

the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. <u>Id</u>. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in <u>Williams</u>, stating that "we stressed in <u>Williams</u> that an unreasonable application is different from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Id</u>. (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct. at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254, 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert. denied</u>, 540 U.S. 965 (2003).

9

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).   In Van Poyck, 290 F.3d at 1322-23 (footnotes omitted), the Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).   Establishing these two elements is not easy:   "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." <u>See</u> <u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." <u>Strickland</u>, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. <u>See</u> <u>id</u>. at 2068.[2]

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 687).

---

[2] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." <u>Davis v. Sec'y</u> <u>for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

## VI. Findings of Fact and Conclusions of Law

## A. Ground 2(c)

As ground 2(c), Petitioner claims ineffectiveness of trial counsel for failure to produce the witnesses who could verify the extent of Petitioner's intoxication. Petitioner raised this claim (as ground one) in his first motion for post conviction relief in state court, and the trial court adjudicated the claim on the merits. The trial court, in denying the claim, stated, in pertinent part:

> In ground one of the Defendant's instant motion, the Defendant claims that his counsel rendered ineffective assistance of counsel by failing to adequately present the defense of voluntary intoxication. The Defendant asserts that counsel should have called witnesses to establish that the Defendant was intoxicated and did not possess the requisite mental state to commit the crime charged. The Defendant's claim is legally meritless.

> Initially, this Court notes that the Defendant in fact received an instruction from the Court to the jury informing them of the defense of voluntary intoxication. (Exhibit "B.") This being the case, defense counsel did utilize the defense of voluntary intoxication and presented sufficient evidence at trial to warrant such an instruction. The Defendant further asserts that counsel failed to call witnesses to testify regarding the Defendant's intoxication. In a claim involving ineffective assistance of counsel for failing to identify and call witnesses, the defendant must allege in the post-conviction motion: (1) the identity of the potential witness; (2) the nature of the witness' testimony had they been called to testify; and (3) how the failure to call the witnesses affected the

13

> outcome of the case.  Highsmith v. State, 617
> So.2d 825 (Fla. 1st DCA 1993).
>
> Additionally, this Court will note that
> the allegedly omitted evidence would have been
> *cumulative* to all of the evidence, referred to
> in the Defendant's Motion, *which was presented
> to the jury* in support of the defense.
> Ragsdale v. State, 720 So.2d 203, 207 (Fla.
> 1998).  Accordingly, this Court finds that the
> Defendant cannot show actual prejudice.

Ex. I at 1-2.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  The Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal

14

law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

At the trial, the State's first witness was Johnny Williams ("Shorty Green"). Tr. at 122, 126. He testified that he has known Petitioner Clarence Thomas for about thirty years or more and that Petitioner is a very good friend. Id. at 123-24. The events of the crime on January 1, 1999, took place at his home. Id. at 124. On that day, Petitioner, Betty Wilcox, Marion Spellers ("Big M") and Reverend Perry visited his home, and Jackie was there for a while but she left. Id. at 124-25.

Williams stated he was not drinking alcohol that day and that he is not a drinker. Id. at 125, 138. He did not see Spellers drinking that day, but Petitioner was carrying a whiskey bottle with a handle on it. Id. at 126-27. Williams did not see him drink, but just saw him with the bottle. Id. at 136. When Petitioner arrived, there was no problem. Id. at 127. Williams stated that he and Petitioner are friends, but when Petitioner began using profane language, Williams asked him to leave. Id. Williams said that Petitioner went outside with Reverend Perry and Spellers, and then Spellers came back in the door. Id. at 127-28. When Petitioner could not get back in the door, he began cutting the screen. Id. at 128, 130-32.

Williams testified that Petitioner "was just drinking and I just never seen him like that before."  Id. at 128.   Then, he knocked out the kitchen window at the side of the house.  Id. at 129, 142.  Williams was shown a photograph, which he identified as his broken kitchen window.  Id. at 129.  Then, Petitioner kicked in the back door.  Id. at 130.  Williams asked Petitioner to leave and then got scared and ran back up the hallway, which is about thirty feet.  Id.  Williams said Petitioner was "jooging" at the back door with a knife or a stick, but Williams did not see what it was because he got scared and ran.  Id. at 130, 133.  Williams looked out the window and saw Petitioner walk across the street, and then the police came.  Id. at 132.  Williams saw the police pick up a knife from across the street and put Petitioner in the police car. Id.

On cross-examination, Williams stated that he had seen Petitioner drink before, but had never seen him like he was on New Year's Day.  Id. at 137.  Williams said he did not see anyone at the house drinking alcohol.  Id. at 138.  He stated that prior to Petitioner's going outside, Petitioner had not threatened Williams in any way.  Id. at 139.  He said they "might tease on the job," but they do not threaten each other.  Id.  He stated that Petitioner was like a son to him.  Id.  Williams did not see Spellers get cut at the window.  Id. at 141.  He noted that he never saw Spellers with any sort of stick or table leg.  Id. at

16

141-42.  He thinks that Petitioner kicked in the back door.  Id. at 142-43.  But, later, he saw Spellers with a towel wrapped around his arm.  Id. at 142, 146.

Marion Spellers ("Big M"), the victim, is sixty years old. Id. at 147-48.  He stated Petitioner is a casual acquaintance he has known for about twenty years.  Id. at 149, 161.  On New Year's Day, 1999, he went over to Williams' house to celebrate and talk. Id.  He was not drinking, and when he arrived, he did not see anyone else drinking.  Id. at 150, 161.  About thirty to forty minutes after he arrived, Petitioner arrived.  Id. at 150. Petitioner seemed very angry, was cursing loudly, "calling ladies names" and had a karate type knife with him and a gallon of liquor. Id. at 151.  Reverend Perry left due to "so much cursing going on . . . ."  Id.  Petitioner was drinking, but Spellers did not think Petitioner was drunk.  Id. at 163.  Petitioner "was ranting and raving and cursing" and threatening Williams and a woman and was then asked to leave.  Id. at 152, 165.  Petitioner was asked to leave on several occasions.  Id. at 152.  Petitioner went out the back door, and Spellers shut the door and locked it.  Id. at 152, 165.  Petitioner was kicking at the door and trying to get inside. Id. at 152, 167.  At the window, Petitioner cut Spellers on the finger with the knife when Spellers was "[s]tanding over the kitchen sink trying to pull the window down."  Id. at 153, 167. The window broke when Petitioner "was slashing at" Spellers with

the knife.  Id. at 153.  Spellers identified the photograph of the window that Petitioner broke.  Id. at 154.  Spellers also identified a photograph of his cut finger from New Year's Day.  Id. at 155, 159.

Spellers said that after Petitioner cut him at the window, he ran and got a table leg for protection.  Id. at 156, 168, 170. Spellers then went to the back door (where Petitioner was on his way inside); Spellers swung the table leg and Petitioner swung the knife.  Id. at 156.  Petitioner aimed to stab Spellers in the chest, but Spellers turned and was stabbed in the left shoulder. Id.  Spellers identified a picture of the cut on his shoulder that Petitioner inflicted on New Year's Day.  Id. at 157, 159.  Spellers said that he hit Petitioner several times with the table leg because Petitioner was trying to stab him; he noted that he did nothing to Petitioner before Petitioner cut him on the hand with the knife at the window.  Id. at 158, 170.  He was shown a photograph of a knife and testified that it looked like the type of knife that Petitioner had that day.  Id. at 158.

Betty Ann Wilcox Hill testified that she was also at the house when the incident occurred.  Id. at 173.  Prior to Petitioner's arrival, she went to the store to buy a four-pack of beer, and when she came back, Petitioner was outside talking to Reverend Perry. Id. at 173-74.  She said Petitioner was teasing with everybody and "was all right."  Id. at 187.  Petitioner did not call her any

18

names, and he was smiling.  <u>Id</u>.  She said that Petitioner and
Williams argued, and Petitioner was asked to leave the house.  <u>Id</u>.
at 175-76.  Petitioner did not leave, but Williams and Petitioner
continued to "pass words."  <u>Id</u>. at 176.  She saw Petitioner with a
knife and a bottle of gin.  <u>Id</u>. at 178.

     She stated that when Petitioner left the house, he kept trying
to get back in and was arguing.  <u>Id</u>. at 178, 186.  He broke the
kitchen window and was pushing on the screen on the back door.  <u>Id</u>.
at 178.  She said that Spellers was talking to Petitioner to try to
get him to stop.  <u>Id</u>. at 178-79.  Reverend Perry went outside to
talk to Petitioner to see if he could take him home.  <u>Id</u>. at 179.
After the window was broken, she noted that Spellers said that
Petitioner had gone "too far now."  <u>Id</u>. at 180.  Ms. Hill was
fearful "you know, with a knife and windows getting broken and
doors getting kicked . . . ."  <u>Id</u>.  She "was running from the front
to the back" and then just sat on the couch, where she starting
shaking and praying.  <u>Id</u>.  She described the incident:

>               He [Spellers] opened the back
>          door when [Petitioner] was at the
>          back door kicking it he opened the
>          back door and he was hitting at
>          Clarence Thomas, hitting at him.
>          And when Clarence got the knife and
>          stabbed him in the arm cause he
>          opened the back door, Big M did.

<u>Id</u>. at 181.  She stated that Spellers had a "big, old stick what he
broke off the coffee table . . . ."  <u>Id</u>. at 183.  She noted that,
before Petitioner's breaking of the window, none of them (Spellers,

19

Williams, nor she) had done anything to Petitioner.  <u>Id</u>. at 184.
She testified that she had never seen Petitioner act like that.
<u>Id</u>.  She noted that Petitioner was drinking and "his eyes was [sic]
closing up on him . . . ."  <u>Id</u>.  She concluded that "if he wasn't
drinking I don't think he would have did [sic] that, he was just
drinking, that's just alcohol."  <u>Id</u>.

Ms. Hill said that Petitioner finally walked away and threw
the knife down.  <u>Id</u>. at 182.  She told the police where the knife
was, and the police retrieved the knife.  <u>Id</u>.  She said it was the
"same knife" because there was no one else over there "because
[she] didn't turn [her] head or blink [her] eyes or nothing because
[she] was standing right there."  <u>Id</u>. at 183.  She had not had
anything to drink; she did not have a chance to drink her beer.
<u>Id</u>.  She was not under the influence of anything that would affect
what she saw or the way she remembered the event.  <u>Id</u>.

Officer Feacher, the police officer called to the scene,
arrested Petitioner, retrieved the knife and placed it in the
evidence bag.  <u>Id</u>. at 189-90.  He recognized the knife that the
prosecutor showed him as the knife he collected from the scene.
<u>Id</u>. at 192.  He testified that Petitioner appeared to be
intoxicated.  <u>Id</u>. at 197.  Officer Feacher saw the stab wound on
Spellers' arm.  <u>Id</u>. at 194.  In the police report, he stated that
it was "minor."  <u>Id</u>. at 196.  He testified that Spellers' injury
was "fresh."  <u>Id</u>. at 198.

At the close of the State's case, defense counsel moved for a judgment of acquittal, which was denied. _Id_. at 200, 206-07. The defense called Ms. Haye as its first witness. _Id_. at 208. She works for the Jacksonville Sheriff's Office and authenticated a picture of Petitioner Clarence Thomas that was taken on the day of the arrest. _Id_. at 208-09.

The defense also called Reverend Perry, a long time friend of both Petitioner and Williams. _Id_. at 212-14. He was at Williams' house on New Year's Day in 1999 and arrived after Petitioner on that day. _Id_. at 212-14. When he arrived, "Clarence and the other tall fellow that [he] worked with, and Johnny, Betty Ann, Big M and Jackie, Kathy" were at the house. _Id_. at 214-15. He did not see anyone at the house drinking, but it appeared to him that some of them had been drinking. _Id_. at 216. He "assumed some of them had been drinking by the look of their eyes and the way they looked." _Id_. Petitioner "had been drinking something by the look at him," but "[t]hat wasn't nothing unusual for [Petitioner]." _Id_. at 219.

Reverend Perry stated that Petitioner was "talking a little loud and told Johnny come on, pay me my money what you owe me and that wasn't nothing unusual for them to ask Johnny because Johnny kind of owes everybody." _Id_. at 217. Later, Petitioner again asked Johnny Williams about the owed money, and Williams told him that he did not have any money. _Id_. Reverend Perry stated that Petitioner said repeatedly to Williams "I need my money." _Id_.

Reverend Perry testified that Petitioner said to Williams that he was going to beat him.  Id. at 218.  However, Perry noted "that's nothing unusual" because "they carry on like that."  Id.  Williams responded to Petitioner by saying Petitioner "better leave [him] alone" because "I don't got no money, if I had it I'd pay you." Id.  Reverend Perry tried to get Petitioner to let him take him home, but Petitioner would not go with him.  Id. at 221-22. Petitioner was not ready to leave the house because he needed his money from Williams.  Id.  Reverend Perry saw Petitioner with a knife, but he did not see Petitioner threaten anyone with the knife.  Id. at 223-24.  Perry left before the window was broken or anyone was hurt.  Id. at 222-23.

The defense rested its case.  Petitioner Clarence Thomas did not testify.  Id. at 226-27.  Defense counsel renewed her motion for judgment of acquittal, which was denied.  Id. at 228.  After the jury was excused, defense counsel requested a voluntary intoxication instruction, and her request was granted.  Id. at 238, 245.

Defense counsel, during closing argument, stated:

> Now, you've heard a lot of evidence in this case of intoxication. Now, that's the one thing that all the witnesses agree on, that Clarence Thomas was extremely intoxicated. He was intoxicated when he got there, he had a bottle of gin, and he continued to drink while he was there. That's the one consistent thing that you all have heard.

And you can find Mr. Thomas not guilty based on the instructions of voluntary intoxication. This is a recognized defense in the state of Florida. And what this instruction will tell you is if you find from the evidence that the defendant was so intoxicated from the voluntary use of alcohol [sic] has to be incapable of forming the intent to touch or strike the victim against his will or having a reasonable doubt about it you should find the defendant not guilty of an aggravated battery.

There's no question here, even the officer admitted that Clarence Thomas was drunk. All the witnesses said he was extremely drunk. He could not -- did not form the intent to hurt Marion Spellers.

Id. at 275-76.

The trial judge, as part of the Court's instructions to the jury, gave a voluntary intoxication instruction. Id. at 291-92. The trial judge stated, in pertinent part:

Additional defense asserted in this case is voluntary intoxication by the use of alcohol. The use of alcohol to the extent that it merely arouses passion, diminishes perceptions, releases inhibitions or clouds reason and judgment does not excuse commission of a criminal act. However, where a certain mental state is an essential element of a crime and a person was so intoxicated that he was incapable of forming that mental state, the mental state would not exist and therefore the crime could not be committed.

As I have told you the intent to touch or strike the victim against his will is an essential element of the crime of aggravated battery. Therefore, if you find from the evidence that the defendant was so intoxicated from the voluntary use of alcohol as to be incapable of forming the intent to touch or strike the victim against his will or you have

23

> reasonable doubt about it you should find the
> defendant not guilty of aggravated battery.

Id.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted). Petitioner, in his Reply, asserts that he informed counsel "of the person that was with him and that the person could tell the court how much of the alcohol, petitioner was in possession of, had been consumed by the petitioner, also where the person could be located at, even the name the person goes by." Reply at 4. Petitioner states the individual "is not an imaginary person," but that witnesses Spellers, Wilcox and Perry "identified" him.[3] Id.

Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient. The trial transcript reflects that testimony on the issue of

---

[3] Marion Spellers, the victim, testified that "[o]ne man that I don't know his name, first time I seen him, and Clarence Thomas" came to Williams' house. Tr. at 150. Further, witness Wilcox Hill testified that "Clarence and his friend, I don't know his name that guy that was with him but they were celebrating New Years." Id. at 178. And, Reverend Perry testified that Clarence "and the other tall fellow that I worked with" and Johnny, Betty Ann, Big M, Jackie and Kathy were at Williams' house. Id. at 214-15. Finally, Reverend Perry stated that "the other gentleman that had came around" with Clarence had left the house. Id. at 220.

Petitioner's intoxication was elicited from the witnesses at the trial. Specifically, Williams and Hill stated they had never seen Petitioner act like he did on New Year's Day. Id. at 128, 137, 184. Spellers stated that Petitioner was drinking, but was not drunk, and Reverend Perry testified Petitioner had been drinking. Id. at 163, 219. The arresting officer testified that Petitioner appeared to be intoxicated. Id. at 197. Several witnesses saw Petitioner carrying a bottle of liquor. Id. at 126-27, 151, 178. Thus, the record clearly reflects that counsel effectively cross-examined the State's witnesses and thereafter produced defense witnesses to show the extent of Petitioner's intoxication at the time of the battery. Moreover, defense counsel received a voluntary intoxication jury instruction.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Under the prejudice prong of the inquiry, Petitioner "must affirmatively prove prejudice by showing that counsel's errors actually had an adverse effect on the defense." United States v. Freixas, 332 F.3d at 1320 (quotation omitted). This showing requires "more than some conceivable effect on the outcome of the proceeding." Id. (quotation omitted). Here, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that

Petitioner has alleged he should have provided.  This ineffectiveness claim is without merit.

### B. Ground 2(d)

As ground 2(d), Petitioner claims ineffectiveness for counsel's failure to request self defense jury instructions that would support Wilcox and Speller's testimony that the victim attacked Petitioner.  Respondents contend, and this Court agrees, that Petitioner did not raise this issue in state court and thus Petitioner has procedurally defaulted this claim.  Response at 37-38.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003), cert. denied, 124 S.Ct 2104 (2004) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).  "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992).  A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 963 (1998)).

While he raised ineffectiveness claims in his Rule 3.850 motions, he failed to raise this issue.  Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. at 10.  A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

It would be futile for this Court to dismiss this case to give Petitioner the opportunity to present his unexhausted claim to the state courts because second or successive 3.850 motions are subject to dismissal if the court finds that the motion "fails to allege

new or different grounds for relief and the prior determination was on the merits" or the court finds that the failure of the movant to assert new and different grounds in a prior motion constitutes an abuse of procedure. Fla. R. Crim. P. 3.850(f). Furthermore, any 3.850 motion that Petitioner filed at this time would be subject to dismissal as untimely. <u>See</u> Fla. R. Crim. P. 3.850(b). Thus, Petitioner's unexhausted claim has been procedurally defaulted. <u>See</u> <u>Bailey</u>, 172 F.3d at 1305.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." <u>Parker v. Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 770 (11th Cir. 2003) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977)), <u>cert</u>. <u>denied</u>, 124 S.Ct. 1513 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." <u>Hill v. Jones</u>, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), <u>cert</u>. <u>denied</u>, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986)), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003). "In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a

28

petitioner must make a colorable showing of actual innocence." Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002) (citations omitted), cert. denied, 124 S.Ct. 408 (2003). The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not mere legal insufficiency. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002); Sawyer v. Holder, 326 F.3d 1363, 1367 (11th Cir.), cert. denied, 124 S.Ct. 258 (2003). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson, 256 F.3d at 1171 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Id. (citation omitted) (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected."). Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. For these reasons, the Court need not review the merits of Petitioner's ineffectiveness claim.

Thus, for all of the above-stated reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of September, 2005.

TIMOTHY J. CORRIGAN
United States District Judge

sc 9/2
c:
Clarence Thomas
Ass't Attorney General

30